UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITIES & MINERALS ENTERPRISE LTD.,<br><br>                              Plaintiff,<br><br>    -against-<br><br>GRETCHEN SHIPPING INC.,<br><br>                              Defendant. | **ECF CASE**<br><br>13 Civ. 6548 (PKC) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE THE ATTACHMENT

Of Counsel:

Jon Werner

**Lyons & Flood, LLP**

Attorneys for Defendant
GRETCHEN SHIPPING INC.
65 West 36th Street, 7th Floor
New York, New York 10018
(212) 594-2400

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ......................................................................................................................... 4

      POINT I        PLAINTIFF BEARS THE BURDEN OF SHOWING THAT AN ATTACHMENT SHOULD NOT BE VACATED UNDER RULE E(4)(F) ............................................................. 4

      POINT II       THE ATTACHMENT ORDER MUST BE VACATED BECAUSE PLAINTIFF DOES NOT POSSESS A *PRIMA FACIE* ADMIRALTY CLAIM ...................................................... 4

      POINT III      THE ATTACHMENT ORDER MUST BE VACATED BECAUSE GRETCHEN HAS NO ATTACHABLE PROPERTY INTEREST IN THE LETTER OF CREDIT ........................ 7

      POINT IV      THE ATTACHMENT ORDER MUST BE VACATED BECAUSE THE LETTER OF CREDIT IS NOT LOCATED WITHIN THE DISTRICT ............................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABKCO Indus. v. Apple Films*, 39 N.Y.2d 670 (1976) .................................................................. 7, 8

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2d Cir. 2006) .................... 1, 4

*Chuidian v. Phillipine Nat'l Bank*, 976 F.2d 561 (9th Cir. 1992) ................................................. 10

*Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F. Supp. 782 (S.D.N.Y. 1984) ........................................................................................................................................ 9

*Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420 (S.D.N.Y. 1987) ....................... 9

*In re M.J. Sales & Distributing Co.*, 25 B.R. 608 (Bankr. S.D.N.Y. 1982) ................................... 9

*In re North Shore & Central Illinois Freight Co.*, 30 B.R. 377 (Bankr. N.D. Ill. 1983) ................ 9

*In re Page*, 18 B.R. 713 (D.C.D.C. 1982) ..................................................................................... 9

*In re Planes, Inc.*, 29 B.R. 370 (Bankr. N.D. Ga. 1983) ................................................................ 9

*In re Twist Cap, Inc.*, 1 B.R. 284 (Bankr. D. Fla. 1979) ................................................................ 9

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995) .................. 5, 6

*Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp. 2d 162 (S.D.N.Y. 1999) ........................................................................................................................................ 6

*Prime Shipping Company Ltd. v. Wajilam Exports Pte. Ltd.*, 2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006) ............................................................................................................. 9

*Reed Int'l Trading Corp. v. Donau Bank AG*, 866 F. Supp. 750 (S.D.N.Y. 1994) ...................... 10

*Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.)*, Ltd., 759 F.2d 262 (2d Cir. 1985) .................................................................................................................................... 7, 9

*RSB Manufacturing Corp. v. Bank of Baroda*, 15 B.R. 650 (S.D.N.Y. 1981) ............................ 10

*Sabolyk v. Morgan Guaranty Trust Co. of New York*, No. 84 Civ. 3179, 1984 WL 1275 (S.D.N.Y. 1984) .................................................................................................................... 10

*Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58 (2d Cir. 2009) ....................... 7

*Sisson v. Ruby*, 497 U.S. 358 (1990) ............................................................................................. 5

*Supreme Merchandise Co. v. Chemical Bank*, 70 N.Y.2d 344 (1987) ................................... 7, 8, 9

**Treatises**

1 Thomas J. Schoenbaum, Admiralty and Maritime Law (2d ed. 1999) ........................................ 6

**Rules**

Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ............................................................................................................... 1

Rule E(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ............................................................................................................ 1, 4

**PRELIMINARY STATEMENT**

Defendant, GRETCHEN SHIPPING INC. ("GRETCHEN"), through its attorneys, Lyons & Flood, LLP, hereby submits this Memorandum of Law in support of its motion to vacate the Ex Parte Order For Process of Maritime Attachment and Garnishment ("Attachment Order") issued to plaintiff COMMODITIES & MINERALS ENTERPRISE LTD. ("CME") on September 17, 2013, pursuant to Rule E(4)(f) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and Local Admiralty Rule E.1.  Accompanying this Memorandum of Law are the Affirmation of Jon Werner dated September 19, 2013 ("Werner Aff."), and the Exhibits attached thereto, to which this Court is respectfully referred.

The dispositive issues for adjudication by this Court are:

1. Whether CME's claim for fraudulent inducement constitutes a "valid *prima facie* admiralty claim" under *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006);

2. Whether GRETCHEN has an attachable property interest in the letter of credit sought to be restrained by CME; and

3. Whether the letter of credit sought to be restrained by CME constitutes property within the district.

As set forth more fully below, CME's fraudulent inducement claim is not considered to be an "admiralty" claim under Federal maritime law (which governs this dispute pursuant to Clause 22 of the relevant charter party) and therefore, cannot support admiralty jurisdiction in this case, let alone a Supplemental Rule B attachment.  In addition, the Attachment Order must

be vacated because GRETCHEN does not possess an attachable property interest in the letter of credit sought to be restrained, which in any event is not located within the district.

## STATEMENT OF FACTS

Defendant GRETCHEN is the registered owner of the M/V GENERAL PIAR, a self-unloading feeder vessel. This action, which was commenced on September 17, 2013, seeks security for CME's claim that GRETCHEN fraudulently induced CME into entering into the January 25, 2010 "BALTIME 1939" time charter of the M/V GENERAL PIAR for a period of 60 months (the "Charter Party"). A copy of the Charter Party is attached as Exhibit 1 to plaintiff's Verified Complaint – *see* Werner Aff. at Exhibit A.

One of the terms of the Charter Party was that CME was required to obtain an irrevocable standby letter of credit from a first-class bank with offices in Miami in the amount of $2.5 million in favor of GRETCHEN to serve as security for the hire payments owed by CME under the Charter Party. *See* Exhibit 1 to Exhibit A of Werner Aff. at Clause 25.

CME obtained the letter of credit from Citibank, N.A. on January 28, 2011, for a term of 60 months. Pursuant to Clause 25 of the Charter Party, one of four conditions must be met before GRETCHEN may draw from the letter of credit: (1) CME's nonpayment of the hire due to GRETCHEN; (2) an arbitration award against CME in favor of GRETCHEN; (3) CME's failure to renew the letter of credit; or (4) CME's failure to reinstate the letter of credit following two consecutive draws. A copy of the letter of credit is attached as Exhibit D to the Werner Aff.

The letter of credit describes the "DATE AND PLACE OF EXPIRY" as being "AT THE OFFICE OF OUR SERVICER, CITICORP NORTH AMERICA, INC., 3800 CITIBANK CENTER, BUILDING B, 3RD FLOOR, TAMPA, FL 33610" and further directs that documents in support of drafts be remitted by courier to "CITIBANK N.A., C/O ITS SERVICER

CITICORP NORTH AMERICA, INC., 3800 CITIBANK CENTER, BUILDING B, 3RD FLOOR, TAMPA, FL 33610, ATTN: U.S. STANDBY DEPT." *See* Exhibit D to Werner Aff.

On June 25, 2012, CME initiated arbitration proceedings before the Society of Maritime Arbitration in New York, as contemplated by Section 22(B) of the Charter Party.  The arbitral panel has been convened, the parties have made submissions, and the arbitration proceedings remain pending.  In those proceedings, CME aims to recover the damages it claims to have suffered as a result of certain alleged deficiencies with respect to the M/V GENERAL PIAR, and further seeks rescission of the Charter Party based on an alleged material breach by GRETCHEN.

In June of 2012, CME also filed injunction proceedings and sought a temporary restraining order in a Federal district court in Miami to restrain GRETCHEN from drawing down on the letter of credit posted by CME in GRETCHEN's favor to secure payment of hire.  CME requests for relief were denied in their entirety and the Miami lawsuit was dismissed in September of 2012.

Now, CME is trying once again to prevent GRETCHEN from obtaining payment of the hire that it is justly entitled to, by seeking to attach the letter of credit issued by Citibank N.A. in this Supplemental Rule B action.

## ARGUMENT

### POINT I

**PLAINTIFF BEARS THE BURDEN OF SHOWING THAT AN ATTACHMENT SHOULD NOT BE VACATED UNDER RULE E(4)(f)**

It is well-established that under Supplemental Rule E(4)(f), the burden is on the plaintiff to demonstrate why the attachment should not be vacated. *Aqua Stoli*, *supra* at 460 F.3d at 445. To sustain its burden on a motion to vacate, a plaintiff must demonstrate that the filing and service requirements of Supplemental Rules B and E have been met and, in addition, that: (a) it has a "valid *prima facie* admiralty claim" against the defendant; (b) the defendant cannot be found within the district; (c) the defendant has property within the district that has been restrained; and (d) there is no statutory or maritime bar to the attachment. *Id.* at 445.

Thus, CME has the burden to establish, *inter alia*, that it has a "valid *prima facie* admiralty claim" against GRETCHEN, that GRETCHEN has property within the district, and that there is no statutory or maritime bar to the attachment. As set forth below, CME cannot carry these burdens and therefore, GRETCHEN respectfully submits that the Attachment Order should be vacated and CME's action dismissed with prejudice.

### POINT II

**THE ATTACHMENT ORDER MUST BE VACATED BECAUSE PLAINTIFF DOES NOT POSSESS A *PRIMA FACIE* ADMIRALTY CLAIM**

As noted above, it is well-settled under the Second Circuit's decision in *Aqua Stoli* that a plaintiff such as CME must establish the existence of a valid *prima facie* admiralty claim against the defendant in order to survive a motion to vacate under Supplemental Rule E(4)(f).

CME is seeking security for its claim that GRETCHEN fraudulently induced it to enter into the Charter Party. However, under Federal maritime law, which pursuant to Clause 22 of

4

the Charter Party is the governing law, CME's claim for fraudulent inducement does not support maritime jurisdiction.

In its Verified Complaint, plaintiff CME has alleged that "[t]his is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves claims for the fraudulent inducement of a maritime contract, i.e., an executed time charter party for the employment of a seagoing cargo. This case also falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, and is brought under the provision of Rule B of the Supplemental Rules For Certain Admiralty and Maritime Claims, and the Federal Arbitration Act, 9 U.S.C. §§ 4, 8 in aid of maritime arbitration." *See* Exhibit A to Werner Aff. at ¶ 4.

While fraudulent inducement can qualify as a maritime tort in some circumstances, it cannot and does not qualify in this case. The Supreme Court has developed a two-pronged test to determine whether a tort falls within the scope of federal admiralty jurisdiction. The first prong examines the locality of the injury. A tort satisfies the locality requirement if it "occurred on navigable waters" or if the "injury suffered on land was caused by a vessel on navigable water." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995).

The second prong considers the connection between the tort and traditional maritime activity. A tort satisfies the connection requirement if it both has "'a potentially disruptive impact on maritime commerce'" and is of a general category of activities with "'a substantial relationship to traditional maritime activity.'" *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 364 (1990)).

"[A] party seeking to invoke federal admiralty jurisdiction … over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Grubart*, *supra*,

5

513 U.S. at 534. *See also* 1 Thomas J. Schoenbaum, Admiralty and Maritime Law, § 3-5 at 78 (2d ed. 1999) (the test for admiralty tort jurisdiction "requires that an incident (1) occur on navigable waters; (2) bear a substantial relationship to traditional maritime activity; and (3) have a potential impact on maritime commerce"); *Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp. 2d 162, 171 (S.D.N.Y. 1999) ("Intentional torts, such as fraud, misrepresentation and fraudulent inducement to contract 'must have an effect on navigable waters to be within admiralty jurisdiction.'") (quoting 1 Schoenbaum § 3-5 at 79).

  Here, CME's fraudulent inducement claim does not meet any of the criteria outlined by the Supreme Court in *Grubart*. The fraudulent inducement did not occur on navigable waters, since any misrepresentations which are alleged to have occurred most certainly occurred on land when the parties were negotiating and executing the Charter Party. Once the Charter Party was entered into, the alleged fraud in the inducement was complete and thus, all potential tortious acts occurred on land. Nor do the alleged tortious acts complained of bear any relationship to traditional maritime activities or have a potential impact of maritime commerce. Therefore, defendant GRETCHEN respectfully submits that the Attachment Order must be vacated for lack of a *prima facie* admiralty claim, and furthermore that plaintiff's claims must be dismissed for lack of subject matter jurisdiction. *See*, *e.g.*, *Maritima*, *supra*, 78 F. Supp. 2d at 172 (holding that where "there is no evidence that any element of the alleged fraud was committed anywhere close to navigable water, or had any effect on water, plaintiff's tort claim is dismissed for lack of maritime jurisdiction.")

# POINT III

## THE ATTACHMENT ORDER MUST BE VACATED BECAUSE GRETCHEN HAS NO ATTACHABLE PROPERTY INTEREST IN THE LETTER OF CREDIT

Even if CME possessed the necessary *prima facie* valid maritime claim to support a Supplemental Rule B attachment in this case, the attachment of the letter of credit issued by Citibank N.A. must fail, because GRETCHEN does not possess an attachable property interest in the letter of credit.

At the outset, it should be noted that New York state law governs the issues of the nature and *situs* of the property sought to be attached. *See*, *e.g.*, *Shipping Corp. of India v. Jaldhi Overseas PTE Ltd.*, 585 F.3d 58, 70 (2d Cir. 2009) ("When there is no federal maritime law to guide our decision, we generally look to state law to determine property rights") (citing to *Reibor International, Ltd. v. Cargo Carriers (KACZ-CO.)*, *Ltd.*, 759 F.2d 262, 266 (2d Cir. 1985)).

It is well-settled under New York law that a beneficiary's interest in an executory letter of credit is not considered property of the beneficiary for the purposes of attachment. In *Supreme Merchandise Co. v. Chemical Bank*, 70 N.Y.2d 344 (1987), the Court of Appeals examined the then novel issue of whether a beneficiary had an attachable property interest in a letter of credit under circumstances where it was executory, meaning that no draft seeking payment had been made to the negotiating bank. It considered an argument that the property interest involved is akin to the contingent property interests involved in *ABKCO Indus. v. Apple Films*, 39 N.Y.2d 670 (1976), which concerned an agreement to pay a portion of net profits from promotion of a film that had not been released yet, but ultimately rejected that argument, holding that "[t]here is a different, and in a relevant sense even greater, contingency in the beneficiary's interest here than in ABKCO." *Id.* at 350.

Specifically, the Court of Appeals held that:

> A letter of credit "is an executory contract that conditions performance of the issuer's obligation (payment) upon performance by the beneficiary (delivery of specified documents)." (Harfield, Letters of Credit, at 79 [ALI-ABA Uniform Commercial Code Practice Handbook 1979] [Letters of Credit].) In the absence of compliance with the terms and conditions of a letter of credit, the issuing bank owes nothing to the beneficiary. Whereas the debtor's interest in ABKCO was contingent solely as to value, which depended on events beyond its own control, Kinzoku's interest is dependent upon its own future performance. Before payment would be due, Kinzoku would have to perform by timely shipment of the goods, compliance with the terms of the credit, and presentation of conforming documents. Given that a beneficiary of a letter of credit retains the option to defeat the interest and render it worthless, we are mindful that allowing attachment in this instance -- unlike ABKCO -- could serve as a disincentive to a beneficiary's performance of the underlying contract as well as the terms of the letter of credit. While this contingency is particularly pertinent in a situation where the beneficiary is a seller of goods thousands of miles from New York, we nevertheless agree with the court below that even claims that depend on further action by the debtor may constitute "property" and that this distinction from ABKCO is not alone dispositive (see, 117 AD2d 424, 431, supra).
>
> The more profound difference from ABKCO, however, lies in the fact that what is at issue here is Kinzoku's interest in a negotiable letter of credit, an instrument extensively used in domestic and international trade, which because of its unique character typically implicates others than the immediate parties to the underlying transaction. The transaction before us, for example, involves not only Kinzoku and its buyer, but also the issuing bank and two negotiating banks -- none of whom had any part in the dispute between petitioner and Kinzoku, yet whose interests could be affected by permitting attachment of Kinzoku's interest in the letter of credit.

*Id.* at 350-351.

The Court of Appeals then concluded that for policy reasons that rationale of *ABKCO* could not be extended to letter of credit, on the basis that "letters of credit have been recognized 'as an essential lubricant that permits the wheels of international trade to turn' as 'indispensable

to international trade' and as 'an invaluable tool that can be employed to facilitate an unlimited variety of transactions.'". *Id.* at 351-352.

A number of Federal courts have similarly held that the proceeds of letters of credit are not subject to attachment. *See*, *e.g.*, *Prime Shipping Company Ltd. v. Wajilam Exports Pte. Ltd.*, 2006 U.S. Dist. LEXIS 34637 (S.D.N.Y. 2006); *Ferrostaal Metals Corp. v. S.S. Lash Pacifico*, 652 F. Supp. 420 (S.D.N.Y. 1987); *Diakan Love, S.A. v. Al-Haddad Bros. Enterprises, Inc.*, 584 F. Supp. 782 (S.D.N.Y. 1984). The same question has arisen in the bankruptcy setting, and those courts have reached a similar conclusion. *See In re North Shore & Central Illinois Freight Co.*, 30 B.R. 377 (Bankr. N.D. Ill. 1983); *In re Planes, Inc.*, 29 B.R. 370 (Bankr. N.D. Ga. 1983); *In re M.J. Sales & Distributing Co.*, 25 B.R. 608 (Bankr. S.D.N.Y. 1982); *In re Page*, 18 B.R. 713 (D.C.D.C. 1982); *but see In re Twist Cap, Inc.*, 1 B.R. 284 (Bankr. D. Fla. 1979).

Here, because no draft has been made under the letter of credit at issue, it remains executory. Therefore, the service of the Attachment Order on Citibank N.A. cannot reach any property of GRETCHEN since prior to the presentation of conforming documents, Citibank N.A. is neither indebted to GRETCHEN nor does it hold any of property of GRETCHEN. As the Second Circuit explained in Reibor, an attachment is void unless a garnishee actually "possesses" a defendant's property when the attachment is served. *Reibor*, *supra*, 759 F.2d at 266.

Moreover, even if a draft had been made, or were to be made, the same policy reasons set forth by the Court of Appeals in *Supreme Merchandise Co.* would mandate that the proceeds of the letter of credit be deemed not be the property of GRETCHEN for the purposes of attachment. In sum, letters of credit and their proceeds are not attachable property under New York state law,

9

and therefore, the Attachment Order in this case should be vacated since the only property sought to be restrained is forever outside the reach of the Attachment Order.

## POINT IV

### THE ATTACHMENT ORDER MUST BE VACATED BECAUSE THE LETTER OF CREDIT IS NOT LOCATED WITHIN THE DISTRICT

As noted above, plaintiff CME also bears the burden of establishing that the property sought to be restrained under the Attachment Order is located within the district.

Here, CME cannot meet that burden because the letter of credit plainly states on its face that its place of expiry and the location to which documents in support of drafts must be remitted to, are in Tampa, Florida – not in New York.  *See* Exhibit D to Werner Aff.  This also comports with the requirement in Clause 25 of the Charter Party that the letter of credit be procured from a first-class bank with offices in Miami.

Thus, defendant respectfully submits that Tampa, Florida as the place of issuance of the letter of credit, is also the place of performance of the letter of credit, and therefore the legal *situs* of the letter of credit.  *See*, *e.g.*, *Reed Int'l Trading Corp. v. Donau Bank AG*, 866 F. Supp. 750, 755, n.2 (S.D.N.Y. 1994) ("Under letter of credit law, the place of issuance of the letter of credit determines the place of its performance"); *Chuidian v. Phillipine Nat'l Bank*, 976 F.2d 561, 562 (9th Cir. 1992) ("place of issuance of a letter of credit … determine[s] the place of its performance"); *Sabolyk v. Morgan Guaranty Trust Co. of New York*, No. 84 Civ. 3179, 1984 WL 1275 (S.D.N.Y. 1984) (unpublished decision); *RSB Manufacturing Corp. v. Bank of Baroda*, 15 B.R. 650, 653-54 (S.D.N.Y. 1981) (looking to the place of issuance of a letter of credit to determine the place of its performance).

Since the place of performance (and thus, the legal *situs*) of the letter of credit is outside the district, plaintiff CME's attachment must be vacated.

**CONCLUSION**

For the foregoing reasons, defendant GRETCHEN respectfully requests that this Court grant the within motion, vacate the Attachment Order, dismiss CME's action with prejudice, release any and all property attached or restrained pursuant to the Attachment Order, and award such other and further relief as the Court may deem just and proper.

Dated: September 19, 2013
New York, New York

                    LYONS & FLOOD, LLP
                    Attorneys for Defendant
                    GRETCHEN SHIPPING INC.

By: _____
                    Jon Werner
                    65 West 36th Street, 7th Floor
                    New York, New York 10018
                    (212) 594-2400
                    jwerner@lyons-flood.com

U:\kmhldocs\2600053\Motions\MOL-vacate.doc

**CERTIFICATE OF SERVICE**

    Jon Werner, an attorney duly admitted to practice before this Honorable Court, affirms on this 19th day of September 2013, I served true copies of the foregoing, via CM/ECF and by e-mail to:

>Holland & Knight LLP
>31 West 52nd Street
>New York, NY 10019
>
>Attn:   Michael J. Frevola, Esq.
>         **michael.frevola@hklawa.com**
>
>         Christopher R. Nolan, Esq.
>         **christopher.nolan@hklaw.com**
>
>         Marie E. Larson, Esq.
>         **marie.larsen@hklaw.com**

_____
                Jon Werner

U:\kmhldocs\2600053\Motions\MOL-vacate.doc