MEMORANDUM OF LAW ON BEHALF OF
VIPSEN CORP., STEPHEN HARRINGTON AND V&H VENTURES, LTD.

February 21, 2014

VIA FEDEX RETURN RECEIPT
EMAIL

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007



USDS SDNY
DOCUMENT
DOCKETED
DATE 9-26-14

Re: *Commodities & Minerals Enterprise, Ltd. V. Gretchen Shipping, Inc., et al.* 13 CV 6548 (PKC)(GWG)

Honorable Judge Castel;

## PRELIMINARY STATEMENT

On behalf of defendants Vipsen, Corp, Stephen Harrington and V&H Ventures, Ltd., (collectively "Consultants") in opposition to the plaintiff's motion to compel arbitration and to appoint an arbitrator.

## STATEMENT OF FACTS

The plaintiff to the United States District Court of New York commenced an action on September 17, 2013 against Gretchen Shipping, Ltd., this initial action did not name the "Consultants". On November 1, 2013 the action was amended to include "Consultants" alleging that the "Consultants" conspired to induce the plaintiff to charter the vessel M/V General Piar ("the vessel") at unfavorable terms.

1

Plaintiff is in business of trading iron ore mainly purchased from Ferrominera de Orinoco CA ("FMO") to various purchasers throughout the world but mainly to China. Am Compl. ¶21. The plaintiff alleges to be specialist in the trading of iron ore. Am Compl.¶10. In the complaint it is alleged that in 2009, plaintiff was advised by FMO that there would be a need for an additional shuttle vessel for its cabotage operation as one of the current vessels in place was being decommissioned. Am Compl.¶24-26.

"Consultants" have had a long working relationship with the principals of Kyma Ship Management was has spanned for nearly 30 years. This working relationship initially began as client / vendor arrangement when the principals were in the cruise business in Miami and the "Consultants" were in the stevedoring business. "Consultants" presented the Venezuelan cabotage opportunity to Kyma upon learning some initial facts about what Commodities & Minerals Enterprise, Ltd., (plaintiff) was in need of from "Vazquez". This then ultimately led to the introduction of the plaintiff to co-defendants Paris Katsoufis and Kyma Ship Management to begin the process of negotiating for a vessel and subsequently a charter. Am Compl.¶¶29-35

Plaintiff alleges that it was hesitant to execute a charter due to several in its mind unusual terms and conditions amongst them no *force majeure* clause, terms and conditions requiring that charterers fund the war risk insurance premium of the M/V General Piar and that letter of credit be placed for the vessel owner's benefit. Am Compl.¶36.

2

On January 25, 2010, a charter party was executed by the plaintiff for the M/V General Piar from co-defendant Gretchen Shipping, Ltd., for a period of 60 months. Am Compl.¶11. As condition for executing the charter party plaintiffs opened a standby letter of credit for $2.5 million (an amount lower than originally agreed to by an executed Letter of Intent of $4 million). Am Compl.¶37

In the amended complaint plaintiff alleges that the situation in Venezuela and with its relationship with FMO had deteriorated considerably. Am Compl.¶41. The general deterioration resulted in smaller and smaller volumes of iron ore being produced by the mines, which created a penalizing situation for the plaintiffs. Am Compl.¶41 Plaintiff alleges that during this period the Venezuelan military assumed control of FMO and initiated wholesale cancellations of existing contracts with the mining company amongst them the CME contract. Am Compl.¶¶44-45

Plaintiff alleges that upon assuming control the Venezuelan military engaged maritime counsel to review existing contracts and to suggest options. Am Compl.¶46. Plaintiff alleges that maritime counsel recommended that its charter parties should include some form of *force majeure* clause. Am Compl.¶47 Plaintiff also alleges that the clauses requiring punctual payments and a standby letter of credit were highly unusual. Am Compl.¶48

Plaintiff alleges that it discovered that "Consultants" were receiving payments from Kyma to which it had no knowledge of. Am Compl.¶52-53 Plaintiff incorrectly

3

alleges that these payments constitute a brokerage commission to which it had no knowledge. Am Compl.¶¶52-66. The "Consultants" received a consulting fee which was an ongoing compensation to provide consulting as well as liaise between the parties as needed.

The amended complaint has six causes of action specifically against the "Consultants". Amongst these actions are sound in fraud in the inducement, a breach of the Florida Deceptive and Unfair Trade Practices Act., violation of the RICO act and negligent representation. This cause of action seeks to compel the "Consultants" to arbitrate the issues in the complaint as a "beneficiary" of the charter.

The demand for arbitration was noticed to the "Consultants" in October 2013 demanding arbitration under the terms of the charter party. Am Compl.¶69. "Consultants" rejected the demand by advising that it was not bound by the arbitration clause in the charter party. Am Compl.¶¶70-72

### THE CLAIMS AGAINST VIPSEN CORP, STEPHEN HARRINGTON AND V&H VENTURES, LTD., ARE NOT SUBJECT TO ARBITRATION

Both New York and federal law require that the issue of arbitrability must be determined by the Court, unless there is an agreement to arbitrate this threshold issue. *Shaw Group, Inc., v. Triplefine Int'l Corp.,* 322 F3d 115 (2d Cir 2003). Vipsen Corp., et al is not signatories to the charter party. The charter party does not specify nor address the issue as to who has the power to determine the issue of

arbitrability. As such any issue of this matter should be determined by the Court. *Contec Corp., v. Remote Solution Co., Ltd.,* 398 F.3d 205 (2d Cir. 2005)

Plaintiff seeks to compel the "Consultants" to arbitrate the claims in the amended complaint pursuant to the arbitration clause despite the fact that the "Consultants" are not signatories to said contract. The "Consultants" connection to this contract were in the form of advising the defendants Kyma Ship Management in the negotiations and beyond during the duration of the contract. A non-signatory to the contract cannot be compelled to arbitrate if the arbitration clause does not bind it. *John Wiley & Sons, Inc., v. Livingston,* 376 US 543, 84 S. Ct. 909 (1964).

It is clear that the actual intent of the amended complaint is to seek relief from a charter contract, which became untenable to the plaintiff upon the loss of its contracts with FMO. Plaintiff is bound by the contract to which it wishes to extract itself from. Plaintiff has fabricated an alleged massive defrauding scheme by the defendants, which has no factual basis.

In the matter of *American Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349 (2nd Cir. 1999) which stated a direct benefit was derived from the contract between the ship's builder and the classification society by the ship owners and insurers (non signatories). The benefit was clear that directly the owners and insurers benefited from a properly classified vessel. In the matter before you the purpose of the contract was to charter the vessel to meet the plaintiff's needs to

5

further export iron ore. While "Consultants" a have received fees from the charter party it has continued to act in that capacity to the defendants, Kyma Ship Management.

*In the case of Deloitte Noraudit A/S v. Deloitte Haskins & Sells, US., 9 F.3d 1060 (2d* Cir. 1993) the distinctions are clear. In this case the plaintiff non signatory received a direct benefit from the contract of the umbrella entity by virtue of the use of the "Deloitte" name, a globally recognized accounting entity and as such was in acceptance of the terms and conditions of said contract. In the instant matter, there is no claim by the "Consultants" to enforce any right under the charter party.

In *Alfa Leval US Treasury Inc., v. National Union Fire Insurance Co.*, 857 F. Supp. 2d 404 (S.D.N.Y. 2012) involves a signatory defendant (insurance carrier) seeking to compel a non-signatory plaintiff to arbitration under an insurance contract dispute. In this matter the Court found that the non-signatory plaintiff received a direct benefit in the form of insurance coverage under the policies. There is no such benefit applicable in the instant matter to the "Consultants".

*Alfa Leval,* further supports the estoppel argument that benefits must be direct from the agreement. Benefits are indirect and insufficient to support estoppel, if the non-signatory exploits the contractual relationship between the parties to the contract but not the agreement itself. See *Oppenheimer Co., Inc. v. Deutsche Bank AG,* US Dist. LEXIS 19655 (S.D.N.Y. 2010)(non signatory defendant not compelled to arbitrate

6

because received no direct benefit from the contract despite financial gain and affiliation with a signatory)

*Phoenix Companies, Inc. v. Abrahamsen*, 2005 US Dist. LEXIS 43615 (S.D.N.Y 2006) (non signatory not compelled to arbitrate despite indirect benefit because it did not have any involvement in the actual performance of the agreement.).

It is clear that "Consultants" received a fee for consulting services, which are clearly indirect in nature. The "Consultants" in no way have direct control over the performance of the charter agreement and only provide consulting services as directed by defendants Kyma Ship Management.

In addition, it is clearly burdensome and inequitable to compel defendant to arbitrate in New York where it has no business and no contacts.

## CONCLUSION

Based upon the above, it is respectfully requested that the plaintiff's motion to compel be dismissed against Vipsen Corp., Stephen C Harrington and V&H Ventures, Ltd., in their entirety and that claims against the defendants be dismissed without prejudice, for lack of personal and subject matter jurisdiction.

Respectfully Submitted,

Stephen Harrington
For Consultants
Pro Se until Selection of Counsel

Stephen C. Harrington
4550 Bay Point Road
Miami, FL 33137

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
Daniel Patrick Moynihan
United States Court House
500 Pearl St.
New York, NY 10007